UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER WALKER,<br><br>    Plaintiff,<br><br>v.<br><br>AUDREY KING, et al,<br><br>    Defendants. | 1:16-cv-01665-EPG (PC)<br><br>ORDER FINDING COGNIZABLE CLAIMS<br><br>ORDER FOR PLAINTIFF TO EITHER:<br><br>(1) NOTIFY THE COURT THAT HE IS WILLING TO PROCEED ONLY ON THE CLAIM FOR FAILURE TO PROTECT IN VIOLATION OF THE FOURTEENTH AMENDMENT AGAINST DEFENDANTS SALOUM, POOLE, PERRYMAN, DAVIS, AND NICKS;<br><br>(2) FILE A SECOND AMENDED COMPLAINT;<br><br>OR<br><br>(3) NOTIFY THE COURT THAT HE WISHES TO STAND ON HIS COMPLAINT, SUBJECT TO THIS COURT ISSUING FINDINGS AND RECOMMENDATIONS TO A DISTRICT JUDGE CONSISTENT WITH THIS ORDER<br><br>(ECF NO. 11)<br><br>THIRTY DAY DEADLINE |

**I.  BACKGROUND**

Roger Walker ("Plaintiff") is a civil detainee proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the complaint commencing this action on November 3, 2016. (ECF No. 1).  The Court struck the complaint

for lack of a signature and gave Plaintiff leave to file an amended complaint.  (ECF No. 8). Plaintiff filed a first amended complaint on February 6, 2017, (ECF No. 11), which is before this Court for screening.

## II.     LEGAL STANDARDS FOR SCREENING

When a party seeks permission to pursue a civil case *in forma papueris*, courts will screen the complaint pursuant to 28 U.S.C. § 1915(e)(2).  In particular, 28 U.S.C. § 1915(e)(2) provides that courts shall dismiss a case at any time if it determines that, *inter alia*, it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  A central function of this screening process is to "discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the cost of bringing suit."  Neitzke v. Williams, 490 U.S. 319, 327 (1989).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

\\\

\\\

### III. ALLEGATIONS IN PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff is a civil detainee pursuant to Welfare & Institutions Code § 6604, detained by the California Department of State Hospitals for care and treatment of an alleged mental disorder.

In the latter part of 2014, a physically violent and emotionally unstable patient, Ryan Wilkerson, was housed with Plaintiff in a four man dormitory. Defendants knew of Wilkerson's past violent behavior as Wilkerson had been in numerous physical altercations and was transferred from unit to unit in an attempt to control him. Plaintiff made multiple requests that he or Wilkerson be moved, starting shortly after Wilkerson arrived in the dorm. Plaintiff made these requests to: his Unit Psychologist, Dr. Willow Saloum; his Unit Supervisors, Leonard Tim Poole, Samantha Perryman, and George M. Davis; and his treatment team.

On February 5, 2015, Wilkerson physically assaulted Plaintiff, causing serious injury to Plaintiff's right eye.

Even after the assault, Defendants, including Davis (who replaced Defendant Perryman as acting Unit Supervisor) and Saloum, forced Plaintiff to remain housed with Wilkerson.

Plaintiff was later transferred from Residential Housing Unit 19 to Intermediate Care Facility 8 after filing multiple complaints about being housed with Wilkerson. Plaintiff alleges that the transfer was adverse and in retaliation for filing complaints.

Plaintiff names as defendants seven individuals at Coalinga State Hospital who were involved in a direct or supervisory way in the transfer and housing of patients.

### IV. PLAINTIFF'S CLAIM FOR A FAILURE TO PROTECT

#### a. Legal Standards

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). "The requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Id. at 743-44.

The "rights of civilly committed persons are protected by the Due Process Clause of the Fourteenth Amendment and not the Cruel and Unusual Punishment Clause of the Eighth Amendment." Irvin v. Baca, No. CV 03-2565-AHS (CW), 2011 WL 838915, at *8 (C.D. Cal. Jan. 18, 2011), report and recommendation adopted, 2011 WL 835834 (C.D. Cal. Feb. 28, 2011). This due process standard recognizes the state is entitled to hold such a person in custody, and that the detainee's confinement raises "concerns similar to those raised by the housing of pretrial detainees, such as the legitimate institutional interest in the safety and security of guards and other individuals in the facility, order within the facility, and the efficiency of the facility's operations." Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001) (citing Johnson-El v. Schoemehl, 878 F.2d 1043, 1048 (8th Cir. 1989)).

The Ninth Circuit recently provided guidance regarding the standards for a failure to protect claim under the Fourteenth Amendment for detainees who were not (yet) convicted of crimes. (Although that case concerned pretrial detainees, the same standard would apply to civil detainees):

> [T]he elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are:
>
> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.
>
> With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily "turn[ ] on the 'facts and circumstances of each particular case.' " *Kingsley*, 135 S.Ct. at 2473 (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)); *see also* Restatement (Second) of Torts § 500 cmt. a (Am. Law Inst. 2016) (recognizing that "reckless disregard" may be shown by an objective standard under which an individual "is held to the realization of the aggravated risk which a reasonable [person] in his place would have, although he does not himself have it").

Castro v. County of Los Angeles (9th Cir. 2016) 833 F.3d 1060, 1071, cert. denied sub nom. Los Angeles County, Cal. v. Castro (U.S., Jan. 23, 2017, No. 16-655) 2017 WL 276190 (internal footnotes omitted).

\\\

\\\

\\\

5

### b. Application to Plaintiff's Complaint

Plaintiff has alleged that staff at Coalinga Hospital made an intentional decision to house Plaintiff with Wilkerson, that it put Plaintiff at substantial risk of harm, that staff did not take measures to abate the risk, and that Plaintiff was injured as a result.

The more difficult question is which of the individuals are properly defendants, keeping in mind that supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior*. When a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

With this law in mind, the Court finds that Plaintiff's allegations against Defendant King are insufficient. Plaintiff alleges that King developed administrative procedures regarding transfer, that she served as Executive Director at Colainga at the time, and pursuant to customs and policies, she had to be notified of an assault, yet did nothing. She also responded to a grievance. Plaintiff also makes the conclusory allegation that Defendant King failed to properly train her staff, but asserts no factual allegations that back up this conclusion. The

Court finds that Defendant King's involvement is that of a supervisor and does not have a sufficient direct connection to be held liable for a failure to protect Plaintiff under the law described above.

Plaintiff has stated a claim against defendant Saloum. Plaintiff alleges that he approached Saloum "no less than 15 times prior to the assault by Patient Wilkerson over his concerns and fear of Wilkerson."

Plaintiff fails to state a claim against defendant Cunningham. Plaintiff's alleges that Defendant Cunningham "was directly responsible for, and oversaw, Defendant Willow Saloum, in Saloum's performance of her duties." The allegation that defendant Cunningham was Defendant Saloum's supervisor, combined with the allegation that Defendant Saloum did not properly follow procedure, is not enough to hold a supervisor liable.

Plaintiff has stated a claim against Defendant Poole. Plaintiff has alleged that Defendant Poole was the Psychiatric Technician Unit Supervisor, that Defendant Poole was directly responsible for ensuring that patents in Plaintiff's unit were safe and secure, that Plaintiff made numerous complaints to Defendant Poole about Wilkerson, and that Defendant Poole denied Plaintiff's requests to be transferred away from Wilkerson.

Plaintiff has stated a claim against Defendant Perryman by alleging that Plaintiff met with Defendant Perryman at least five times and told her of his fear and concerns about Wilkerson, and that Defendant Perryman did nothing.

Plaintiff has stated a claim against Defendant Davis by alleging that he informed Defendant Davis that he was in fear of Wilkerson, and that Defendant Davis did nothing.

Plaintiff has stated a claim against Defendant Nicks,[1] who was the Coalinga Transfer Coordinator. Plaintiff alleges that Defendant Nicks was directly responsible for transferring Wilkerson to the same dorm as Plaintiff. Defendant Nicks made this transfer in violation of protocol. Additionally, Plaintiff alleges that Defendant Nicks had access to Wilkerson's

---

[1] The Court notes that in part of the first amended complaint, Plaintiff identifies the Coalinga Transfer Coordinator as a Doe defendant. However, both the caption of the first amended complaint and the section that lists defendants identifies Donnell Nicks as the Patient Transfer Coordinator.

records, which showed that Wilkerson was emotionally troubled and physically aggressive with fellow patients.

## V. PLAINTIFF'S CLAIM FOR RETALIATION

### a. Legal Standards

Allegations of retaliation against a plaintiff's First Amendment rights to speech or to petition the government may support a Section 1983 claim. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).

A viable claim of First Amendment retaliation against a civil detainee entails five elements: (1) the plaintiff engaged in protected conduct; (2) an assertion that a state actor took some adverse action against the plaintiff; (3) the adverse action was "because of" the plaintiff's protected conduct (i.e., "retaliatory motive"); (4) the adverse action "would chill or silence a person of ordinary firmness from future First Amendment activities;" and (5) the action did not reasonably advance a legitimate correctional goal. See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Conduct protected by the First Amendment in the detention context has included filing of a prison grievance, Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). In order to show "retaliatory motive," a plaintiff must show that her protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation omitted). The plaintiff must establish the "retaliatory motive" with more than "sheer speculation." Pratt, 65 F.3d at 808. To survive a motion to dismiss, a plaintiff must plead enough facts to plausibly establish a defendant's retaliatory motive. See Brodheim, 584 F.3d at 1271; Iqbal, 129 S. Ct. at 1949; compare Pratt, 65 F.3d at 808 (concluding, while the timing of adverse actions can be circumstantial evidence to establish a retaliatory motive, timing alone did not "support the inference" of retaliatory motive); with Bruce, 351 F.3d at 1289 (concluding a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by showing suspect timing supplemented by statements and other evidence). Furthermore, a retaliation claim is not plausible if there are "more likely explanations" for the action. Iqbal, 129 S. Ct. at 1951; see, e.g., Pratt, 65 F.3d at 808

(concluding that allowing an inmate to be closer to his family was a more likely explanation for his transferal than retaliation); Stone v. Becerra, No. CV-10-138-RMP, 2011 WL 1565299, at *3 (E.D. Wash. Apr. 25, 2011), aff'd, 520 Fed.Appx. 542 (9th Cir. 2013) (concluding timing alone was insufficient evidence of retaliatory motive and more likely explanation for the alleged adverse action, a cell search, is that "it was actually random").

### b. Evaluation of Plaintiff's Complaint

Plaintiff's allegations do not establish a claim for retaliation under this law. Plaintiff was transferred after filing a grievance related to being housed with Wilkerson. It is very possible that the transfer was done not to chill First Amendment speech, but to remove him from Wilkerson. Moreover, Plaintiff has not alleged that any of the defendants claimed that Plaintiff was being transferred in retaliation, or otherwise complained about Plaintiff's complaints. Plaintiff alleges that defendants repeatedly claimed that his transfer was not adverse. Although Plaintiff disagrees, his factual allegations, if true, do not establish that defendants violated his First Amendment rights by transferring him because of his complaints regarding his housing with Wilkerson.

## VI. CONCLUSION AND ORDER

The Court has screened Plaintiff's first amended complaint and finds that it states a cognizable claim for failure to protect in violation of the Fourteenth Amendment against Defendants Saloum, Poole, Perryman, Davis, and Nicks. However, the first amended complaint states no other cognizable claims these defendants, or any of the other defendants.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave to amend shall be freely given when justice so requires." Accordingly, the Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Plaintiff is granted leave to file an amended complaint within thirty days if he chooses to do so.

The amended complaint must allege constitutional violations under the law as discussed above. Specifically, Plaintiff must state what each named defendant did that led to the

deprivation of Plaintiff's constitutional or other federal rights.  Fed. R. Civ. P. 8(a); <u>Iqbal</u>, 556 U.S. at 678; <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims.  <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff is advised that an amended complaint supersedes the original complaint, <u>Lacey v. Maricopa County</u>, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superseded pleading, Local Rule 220.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:
   a. File a Second Amended Complaint curing the deficiencies identified by the Court in this order if he believes additional true factual allegations would state any additional claims or claims against any additional defendants;
   b. Notify the Court in writing that he does not wish to file an amended complaint and is instead willing to proceed only on the claim allowed in this order for failure to protect in violation of the Fourteenth Amendment against Defendants Saloum, Poole, Perryman, Davis, and Nicks; or
   c. Notify the Court in writing that he does not agree to go forward on only the claims found cognizable by this order or file an amended complaint, in which case the Court will issue Findings and Recommendation to a District Judge consistent with this order.

3. If Plaintiff chooses to file an amended complaint, Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:16-cv-01665-EPG; and

4. <u>Failure to comply with this order may result in the dismissal of this action for failure to comply with a court order</u>.

IT IS SO ORDERED.

Dated: __**March 13, 2017**__                    /s/ *Erica P. Grosjean*
UNITED STATES MAGISTRATE JUDGE