UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER WALKER,<br><br>        Plaintiff,<br><br>   v.<br><br>AUDREY KING, et al.,<br><br>        Defendants. | Case No. 1:16-cv-01665-AWI-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED AGAINST DEFENDANTS SALOUM, POOLE, PERRYMAN, DAVIS, AND NICKS ON PLAINTIFF'S CLAIM FOR FAILURE TO PROTECT IN VIOLATION OF THE FOURTEENTH AMENDMENT, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED WITH PREJUDICE<br><br>(ECF NO. 18)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

I.      BACKGROUND

Roger Walker ("Plaintiff") is a civil detainee proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.   Plaintiff filed the complaint commencing this action on November 3, 2016.  (ECF No. 1).  The Court struck the complaint for lack of a signature and gave Plaintiff leave to file an amended complaint.  (ECF No. 8).  On February 6, 2017, Plaintiff filed a first amended complaint.  (ECF No. 11).  The Court screened Plaintiff's complaint, found certain cognizable claims, and gave Plaintiff leave to amend on March 15, 2017.  (ECF No. 13).  Plaintiff filed a second amended complaint on May 15, 2017, which is before this Court for screening.  (ECF No. 18)

For the reasons described below, this Court recommends allowing Plaintiff to proceed on his second amended complaint against Defendants Saloum, Poole, Perryman, Davis, and

Nicks for failing to protect Plaintiff in violation of the Fourteenth Amendment, and that all other claims and defendants be dismissed with prejudice.

## II.    LEGAL STANDARDS FOR SCREENING

When a plaintiff seeks permission to pursue a civil case *in forma papueris*, courts will screen the complaint pursuant to 28 U.S.C. § 1915(e)(2).  In particular, 28 U.S.C. § 1915(e)(2) provides that a court shall dismiss a case at any time if it determines that, *inter alia*, the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  A central function of this screening process is to "discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the cost of bringing suit."  Neitzke v. Williams, 490 U.S. 319, 327 (1989).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

\\\
\\\
\\\

### III. ALLEGATIONS IN PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff is a civil detainee pursuant to Welfare & Institutions Code § 6604, detained by the California Department of State Hospitals for care and treatment of an alleged mental disorder.

In the latter part of 2014, a physically violent and emotionally unstable patient, Ryan Wilkerson, was housed with Plaintiff in a four man dormitory. Defendants knew of Wilkerson's past violent behavior as Wilkerson had been in numerous physical altercations and was transferred from unit to unit in an attempt to control him. Plaintiff made multiple requests that he or Wilkerson be moved, starting shortly after Wilkerson arrived in the dorm. Plaintiff made these requests to: his Unit Psychologist, Dr. Willow Saloum; his Unit Supervisors, Tim Poole, Samantha Perryman, and George M. Davis; and his treatment team.

On February 5, 2015, Wilkerson physically assaulted Plaintiff, causing serious injury to Plaintiff's right eye.

Even after the assault, Defendants, including Davis (who replaced Defendant Perryman as acting Unit Supervisor) and Saloum, forced Plaintiff to remain housed with Wilkerson for several days. While Wilkerson was eventually moved, he was moved to another room on the same unit. Wilkerson continued to threaten and harass Plaintiff. Days after the first attack, Wilkerson assaulted Plaintiff by grabbing Plaintiff from behind with both arms encircling his body, causing Plaintiff to defend himself by throwing Wilkerson to the ground and holding him there.

Plaintiff was later transferred from Residential Housing Unit 19 to Intermediate Care Facility 8 after filing multiple complaints about being housed with Wilkerson. Plaintiff alleges that the transfer was adverse and in retaliation for filing complaints.

Plaintiff names as defendants the Department of State Hospitals-Coalinga as well as seven individuals at Coalinga State Hospital who were involved in a direct or supervisory way in the transfer and housing of patients.

Plaintiff's allegations are similar to those asserted in his first amended complaint, which was previously screened by the Court. Plaintiff's second amended complaint is 126 pages and

includes additional allegations regarding the involvement of the defendants, as well as allegations as to violations of hospital procedures.

## IV. PLAINTIFF'S CLAIM FOR FAILURE TO PROTECT IN VIOLATION OF THE FOURTEENTH AMENDMENT

### a. Legal Standards

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). "The requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Id. at 743-44.

The "rights of civilly committed persons are protected by the Due Process Clause of the Fourteenth Amendment and not the Cruel and Unusual Punishment Clause of the Eighth Amendment." Irvin v. Baca, No. CV 03-2565-AHS (CW), 2011 WL 838915, at *8 (C.D. Cal. Jan. 18, 2011), report and recommendation adopted, 2011 WL 835834 (C.D. Cal. Feb. 28, 2011). This due process standard recognizes the state is entitled to hold such a person in custody, and that the detainee's confinement raises "concerns similar to those raised by the housing of pretrial detainees, such as the legitimate institutional interest in the safety and security of guards and other individuals in the facility, order within the facility, and the efficiency of the facility's operations." Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001) (citing Johnson-El v. Schoemehl, 878 F.2d 1043, 1048 (8th Cir. 1989)).

The Ninth Circuit recently provided guidance regarding the standards for a failure to protect claim under the Fourteenth Amendment for detainees who were not (yet) convicted of crimes:

> [T]he elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are:
>
> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.
>
> With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily "turn[ ] on the 'facts and circumstances of each particular case.' " Kingsley, 135 S.Ct. at 2473 (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)); see also Restatement (Second) of Torts § 500 cmt. a (Am. Law Inst. 2016) (recognizing that "reckless disregard" may be shown by an

objective standard under which an individual "is held to the realization of the aggravated risk which a reasonable [person] in his place would have, although he does not himself have it").

<u>Castro v. County of Los Angeles</u> (9th Cir. 2016) 833 F.3d 1060, 1071.[1]

**b. Application to Plaintiff's Complaint**

Plaintiff has sufficiently alleged that staff at Coalinga Hospital made an intentional decision to house Plaintiff with Wilkerson, that they put Plaintiff at substantial risk of harm, that they did not take measures to abate the risk, and that Plaintiff was injured as a result.

The more difficult question is which of the individuals are properly defendants, keeping in mind that supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior*. When a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See <u>Iqbal</u>, 556 U.S. at 676-77l <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979); <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations

---

[1] Although this case concerned pretrial detainees, the same standard applies to civil detainees. <u>See, e.g.</u>, <u>Smith v. Ahlin</u>, No. 116CV00138SKOPC, 2016 WL 5943920, at *5 (E.D. Cal. Oct. 12, 2016); <u>Curry v. Lopez</u>, 683 F. App'x 637, 638 (9th Cir. 2017).

omitted).

Plaintiff alleges that he requested that he or Wilkerson be moved from the dorm, starting shortly after Wilkerson arrived in the dorm, directly to Defendants Willlow Saloum, Tim Poole, Samantha Perryman, and George M. Davis. Plaintiff also alleges that after the first attack, Defendants Davis and Saloum forced Plaintiff to remain housed with Wilkerson in the same room for several days. While Wilkerson was eventually moved, he was moved to another room on the same unit, and he attacked Plaintiff again. Accordingly, Plaintiff has stated a claim against Defendants Saloum, Poole, Perryman and Davis.

Plaintiff also alleges a claim against the Department of State Hospitals-Coalinga. The Eleventh Amendment erects a general bar against federal lawsuits brought against the state. Wolfson v. Brammer, 616 F.3d 1045, 1065–66 (9th Cir. 2010) (citation and quotation marks omitted). While "[t]he Eleventh Amendment does not bar suits against a state official for prospective relief," Wolfson, 616 F.3d at 1065–66, suits against the state or its agencies are barred absolutely, regardless of the form of relief sought, see, e.g., Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L.Ed.2d 67 (1984); Buckwalter v. Nevada Bd. of Medical Examiners, 678 F.3d 737, 740 n. 1 (9th Cir. 2012). Accordingly, because Coalinga State Hospital is part of the California Department of State Hospitals, which is a state agency, it is also entitled to Eleventh Amendment immunity from suit.

Separate and apart from the issue of sovereign immunity, this Court finds that Plaintiff's allegations do not sufficiently demonstrate that the Department of State Hospitals-Coalinga directly caused the incident. Indeed, Plaintiff points to numerous hospital rules and requirements that he says would have prevented the incident. He then alleges that there was insufficient training of these rules and regulations, but does not allege a factual basis for this assertion. Moreover, there are no allegations of anything said or done by the Department of State Hospitals-Coalinga directly related to this incident.

As to Defendant Audrey King, Plaintiff alleges that she is liable due to "actions or inaction in the training, supervision and control of her subordinate employees." Moreover, Plaintiff alleges that King would have received daily reports of high risk patients and would

have been aware of dangerous proclivities of Wilkerson. King, as executive director, is also charged with the effective delivery of services in an environment conducive to the quality of care and treatment of the patients.

This Court finds that Plaintiff's allegations as to Defendant King are insufficient to state a claim because they concern her role in a supervisory capacity. Defendant King was not directly involved in the incident. She did not directly hear any complaints against Wilkerson and is not alleged to have taken any direct action. Nor is it alleged that she had the direct responsibility to take any such action. The allegations against her as a supervisor are insufficient under the law cited above.

The same is true of Plaintiff's allegations against Defendant Lindsey Cunningham. Plaintiff alleges that she was the Program Senior Licensed Psychologist at the time and "had the additional responsibility of overseeing and supervising Saloum's work and the professional decisions Saloum made concerning each patient." Plaintiff does not allege a direct role in the incident beyond her supervisory capacity.

As for Defendant Donnell Nicks, Plaintiff alleges that she was the Coalinga Transfer Coordinator and directly responsible for the final determination of where all patents are housed within the facility. Plaintiff alleges that Nicks' decision to transfer Wilkerson to the same unit as Plaintiff exposed him to harm. While it may be that Defendant Nicks' role is supervisory, construing Plaintiff's allegations in his favor at this stage, the Court finds that Plaintiff has stated a claim against Defendant Nicks as well.

## V.    PLAINTIFF'S CLAIM FOR RETALIATION

### a.    Legal Standards

Allegations of retaliation against a plaintiff's First Amendment rights to speech or to petition the government may support a Section 1983 claim. See <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995).

A viable claim of First Amendment retaliation against a civil detainee entails five elements: (1) the plaintiff engaged in protected conduct; (2) an assertion that a state actor took some adverse action against the plaintiff; (3) the adverse action was "because of" the plaintiff's

protected conduct (i.e., "retaliatory motive"); (4) the adverse action "would chill or silence a person of ordinary firmness from future First Amendment activities;" and (5) the action did not reasonably advance a legitimate correctional goal.  See Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Conduct protected by the First Amendment in the detention context has included filing of a prison grievance, Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).  In order to show "retaliatory motive," a plaintiff must show that his or her protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct."  Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation omitted).  The plaintiff must establish the "retaliatory motive" with more than "sheer speculation."  Pratt, 65 F.3d at 808.  To survive a motion to dismiss, a plaintiff must plead enough facts to plausibly establish a defendant's retaliatory motive.  See Brodheim, 584 F.3d at 1271; Iqbal, 129 S. Ct. at 1949; compare Pratt, 65 F.3d at 808 (concluding that, while the timing of adverse actions can be circumstantial evidence to establish a retaliatory motive, timing alone did not "support the inference" of retaliatory motive); with Bruce, 351 F.3d at 1289 (concluding a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by showing suspect timing supplemented by statements and other evidence).  Furthermore, a retaliation claim is not plausible if there are "more likely explanations" for the action. Iqbal, 129 S. Ct. at 1951; see, e.g., Pratt, 65 F.3d at 808 (concluding that allowing an inmate to be closer to his family was a more likely explanation for his transferal than retaliation); Stone v. Becerra, No. CV-10-138-RMP, 2011 WL 1565299, at *3 (E.D. Wash. Apr. 25, 2011), aff'd, 520 Fed.Appx. 542 (9th Cir. 2013) (concluding timing alone was insufficient evidence of retaliatory motive and more likely explanation for the alleged adverse action, a cell search, is that "it was actually random.").

**b.  Evaluation of Plaintiff's Complaint**

Plaintiff's allegations do not establish a claim for retaliation.  Plaintiff was transferred after multiple complaints about being housed with Wilkerson.  Plaintiff alleges this was done in retaliation because he filed complaints, but there are no direct allegations supporting that motive.  Indeed, Plaintiff asked to be moved away from Wilkerson.  Thus, the granting of that

request, albeit to a place Plaintiff does not prefer, does not establish a retaliatory motive. Moreover, Plaintiff has not alleged that any of the defendants claimed that Plaintiff was being transferred in retaliation for filing complaints, or that they otherwise complained about Plaintiff's complaints. Plaintiff alleges that defendants repeatedly claimed that his transfer was not adverse. Although Plaintiff disagrees, his factual allegations, if true, do not establish that defendants violated his First Amendment rights by transferring him because of his complaints regarding his housing with Wilkerson.

## VI. CONCLUSION AND ORDER

The Court has screened Plaintiff's second amended complaint and finds that it states a cognizable claim for failure to protect in violation of the Fourteenth Amendment against Defendants Saloum, Poole, Perryman, Davis, and Nicks. However, the Court finds that the second amended complaint states no other cognizable claims.

The Court will not recommend granting further leave to amend. This is Plaintiff's second amended complaint, and the Court has already provided ample legal guidance.

Therefore, based on the foregoing, IT IS HEREBY RECOMMENDED that this case proceed against defendants Saloum, Poole, Perryman, Davis, and Nicks on Plaintiff's claim for failure to protect in violation of the Fourteenth Amendment, and that all other claims and defendants be dismissed with prejudice.

///
///
///
///
///
///
///
///
///
///

These findings and recommendations will be submitted to the united states district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.   The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 23, 2017**          ___/s/ Erica P. Grosjean___
                                        UNITED STATES MAGISTRATE JUDGE