UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER WALKER,<br><br>  Plaintiff,<br><br> v.<br><br>TIM POOLE, et al.,<br><br>  Defendants. | Case No. 1:16-cv-01665-AWI-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS DAVIS, NICKS, PERRYMAN, AND POOLE'S MOTION FOR SUMMARY JUDGMENT BE GRANTED AND THAT DEFENDANT SALOUM'S MOTION FOR SUMMARY JUGDMENT BE DENIED<br><br>(ECF Nos. 111 & 112)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

I.   **INTRODUCTION**

Roger Walker ("Plaintiff") is a civil detainee proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  This case proceeds "against defendants Saloum, Poole, Perryman, Davis, and Nicks on Plaintiff's claim for failure to protect in violation of the Fourteenth Amendment."  (ECF No. 35, p. 2).[1]

On December 17, 2019, defendants Davis, Nicks, Perryman, and Poole moved for summary judgment.  (ECF No. 111).  On April 23, 2020, Plaintiff filed his oppositions to the

\\\

---

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

1

motion. (ECF Nos. 126-131).[2]  On April 29, 2020, defendants Davis, Nicks, Perryman, and Poole filed their reply. (ECF No. 132).  On June 3, 2020, the Court issued an order giving Plaintiff fourteen days to properly verify and resubmit his declarations in opposition to the motion.[3] (ECF No. 136).  The fourteen-day period has expired, and Plaintiff has not resubmitted his declarations.

On December 18, 2019, defendant Saloum moved for summary judgment. (ECF Nos. 112 & 113).  On March 9, 2020, Plaintiff filed his opposition. (ECF Nos. 120 & 121).  On March 16, 2020, defendant Saloum filed her reply. (ECF No. 122).

For the reasons that follow, the Court will recommend that defendants Davis, Nicks, Perryman, and Poole's motion for summary judgment be granted and that defendant Saloum's motion for summary judgment be denied.

## II.   LEGAL STANDARDS

### a. Legal Standards for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

---

[2] One of Plaintiff's oppositions is to "Lindsey Cunningham's Motion for Summary Judgment." (ECF No. 130).  However, Lindsey Cunningham was dismissed from this case at the screening stage. (ECF Nos. 19 & 35).  Plaintiff's oppositions also include proposed discovery requests.  However, non-expert discovery has closed, and Plaintiff has not requested that it be reopened.  Additionally, the Court already allowed Plaintiff to take additional discovery before responding to the motions for summary judgment. (ECF No. 117).

[3] While Plaintiff's oppositions are signed under penalty of perjury, Plaintiff does not state that the information contained in the oppositions is true.  To be admissible, a declaration must be subscribed by the declarant "as true under penalty of perjury, and dated, in substantially the following form: … 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date). (Signature).'" 28 U.S.C. § 1746(2).

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322.  Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011).  It need only draw inferences, however, where there is "evidence in the record … from which a reasonable inference … may be drawn…"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2 (citation omitted).  Additionally, "[t]he evidence of the non-movant is to be believed…." Anderson, 477 U.S. at 255.

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

  b. Legal Standards for Failure to Protect

As a civil detainee, Plaintiff is "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."

1  Youngberg v. Romeo, 457 U.S. 307, 322 (1982); Jones v. Blanas, 393 F.3d 918, 931 (9th Cir.
2  2004). His right to safe conditions of confinement is protected by the substantive component of
3  the Due Process Clause. Youngberg, 457 U.S. at 315-316.

4  Liability may only be imposed when a defendant fails to use "professional judgment."
5  Youngberg, 457 U.S. at 323. A defendant fails to use professional judgment when his or her
6  decision is "such a substantial departure from accepted professional judgment, practice, or
7  standards as to demonstrate that [he or she] did not base [his or her] decision on such a
8  judgment." Id. (footnote omitted). In determining whether a defendant has met his or her
9  constitutional obligations, "decisions made by the appropriate professional are entitled to a
10 presumption of correctness." Id. at 324. "[T]he Constitution only requires that the courts make
11 certain that professional judgment in fact was exercised. It is not appropriate for the courts to
12 specify which of several professionally acceptable choices should have been made." Id. at 321
13 (quoting Romeo v. Youngberg, 644 F.2d 147, 178 (3d Cir. 1980) (Seitz, C. J., concurring),
14 vacated, 457 U.S. 307 (1982)).

15 "[C]ourts must restrict their inquiry to two questions: (1) whether the decisionmaker is a
16 qualified professional entitled to deference, and (2) whether the decision reflects a conscious
17 indifference amounting to gross negligence, so as to demonstrate that the decision was not
18 based upon professional judgment." Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992).
19 For "conscious indifference," subjective awareness is not required. Ammons v. Washington
20 Dep't of Soc. & Health Servs., 648 F.3d 1020, 1029 (9th Cir. 2011). It is an objective test.
21 (Id.).

22      c.  Legal Standards for Qualified Immunity

23 "The doctrine of qualified immunity protects government officials 'from liability for
24 civil damages insofar as their conduct does not violate clearly established statutory or
25 constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan,
26 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In
27 determining whether a defendant is entitled to qualified immunity, the Court must decide (1)
28 whether the facts shown by Plaintiff make out a violation of a constitutional right; and (2)

4

whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232. To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" Reichle v. Howards, 132 S. Ct. 2088, 2090 (2012) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)) (alteration in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

        d. <u>Personal Participation Requirement</u>

A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009). In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

### III. DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This case is proceeding on Plaintiff's claim that Defendants failed to protect him from a violent and emotionally unstable patient, Ryan Wilkins. After a review of the evidence, the Court finds that the following facts are undisputed for purposes of Defendants' motions for summary judgment.

Ryan Wilkins was moved into Plaintiff's dorm room in RU-19 on or around July of 2014. Defendants Davis, Nicks, Perryman, and Poole's Separate Statement of Undisputed Material Facts ("UMF") 8; ECF No. 18, p. 4. On February 5, 2015, Plaintiff and Wilkins got into a fight, which Plaintiff alleges started after Wilkins blindsided him with a powerful blow. UMF 15; ECF No. 18, p. 5. Plaintiff and Wilkins were separated by a dorm room change, but remained on the same unit. UMF 17; ECF No. 18, pgs. 5-6. Several days later, Plaintiff and Wilkins got into a second fight, which Plaintiff alleges started after Wilkins grabbed him from

1   behind with both arms encircling his body.  UMF 18; ECF No. 18, p. 5.  After the second
2   incident, Wilkins was transferred to a different unit.  UMF 19; ECF No. 18, p. 6.

3   While it is undisputed that there were two incidents between Plaintiff and Wilkins, defendants Davis, Nicks, Perryman, and Poole move for summary judgment under the doctrine of qualified immunity, arguing, among other things, that they were not responsible for moving Wilkins into Plaintiff's dorm room and that they did not have authority to move either Plaintiff or Wilkins off RU-19 after the fight.  (ECF No. 111).  These defendants also move for summary judgment on the ground that they did not violate the professional judgment standard. (Id.).

Defendant Saloum also moves for summary judgment, arguing, among other things, that she did not have authority to transfer either Plaintiff or Wilkins, that she did not violate the professional judgment standard, and that she is entitled to qualified immunity.  (ECF No. 112).

After reviewing the parties' submissions, the Court finds that defendants Davis, Nicks, Perryman, and Poole's motion for summary judgment should be granted and that defendant Saloum's motion for summary judgment should be denied.

The Court notes that, in his oppositions, Plaintiff appears to argue that Defendants are liable under state law.  However, this case is not proceeding on any state law claims, and Plaintiff has not moved to amend his complaint.  Moreover, leave to amend appears to be futile because Plaintiff has not pled compliance with California's Government Claims Act.  Under the Government Claims Act, presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit.  State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245 (Cal. 2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  To state a tort claim against a public entity or employee, Plaintiff must allege compliance with the Government Claims Act.  Bodde, 32 Cal.4th at 1245; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

a.  Objections to Evidence

To the extent the Court necessarily relied on evidence that has been objected to, the Court relied only on evidence it considered to be admissible.  Generally, it is not the practice of

6

the Court to rule on evidentiary matters individually in the context of summary judgment.

      b. <u>Plaintiff's Failure to Properly Oppose Defendants Davis, Nicks, Perryman, and Poole's Motion for Summary Judgment</u>

          *i. Defendants Davis, Nicks, Perryman, and Poole's Argument*

In defendants Davis, Nicks, Perryman, and Poole's reply, these defendants argue that Plaintiff failed to comply with the Federal Rule of Civil Procedure 56 and Local Rule 260(b) in opposing their motion. (ECF No. 132, pgs. 6-9). They argue that Plaintiff did not reproduce the statement of undisputed facts as required and that Plaintiff submitted no evidence to dispute the material facts set out by defendants (Plaintiff submitted declarations, but these defendants argue that they were not properly verified).

          *ii. Legal Standards*

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B).

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Under this Court's local rules, "[e]ach motion for summary judgment or summary adjudication shall be accompanied by a 'Statement of Undisputed Facts' that shall enumerate discretely each of the specific material facts relied upon in support of the motion and cite the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon to establish that fact." Local Rule 260(a). "Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that

7

are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial…. The opposing party shall be responsible for the filing of all evidentiary documents cited in the opposing papers." Local Rule 260(b) (citation omitted).

### iii. Analysis

Defendants Davis, Nicks, Perryman, and Poole are correct that Plaintiff did not reproduce the statement of undisputed facts as required by Local Rule 260(b) and that Plaintiff did not submit any admissible evidence in opposition to their motion. Plaintiff also did not cite to particular parts of materials already in the record. The Court sent Plaintiff a copy of his declarations and gave Plaintiff the opportunity to cure the deficiencies in the declarations (ECF No. 136), but Plaintiff did not do so.

As Plaintiff failed to properly address defendants Davis, Nicks, Perryman, and Poole's assertion of facts, the Court will consider all of their properly supported facts as undisputed for purposes of this motion.[4] Fed. R. Civ. P. 56(e)(2).

### c. Defendant Davis

According to the declaration of defendant Davis, he was the RU-19 Unit Supervisor in September or October of 2014. (ECF No. 115-5, ¶ 3). As the Unit Supervisor, he was responsible for the daily operations of the entire unit. (Id.). When he started working as the Unit Supervisor, Plaintiff and Wilkins already resided on RU-19. (Id. at ¶ 4). Davis did not know that Plaintiff had any complaints about Wilkins, and did not know that Wilkins had displayed any aggressive or otherwise problematic behavior. (Id.) Prior to the fight on February 5, 2015, Davis "was unaware of any actual conflict between Walker and Wilkins. [He] observed no 'red flags.' [He has] no recollection of Walker ever telling [him] he was scared of Wilkins. [Davis] had no reason to believe Wilkins posed any kind of actual threat or

---

[4] Plaintiff's opposition to defendant Saloum's motion for summary judgment suffers from some of the same defects. However, it appears that Plaintiff did respond to defendant Saloum's Separate Statement of Undisputed Material Facts. Additionally, the verification in Plaintiff's supporting declaration is closer to the appropriate form, and defendant Saloum did not argue that Plaintiff did not properly verify his declaration. Therefore, the Court will not consider all of defendant Saloum's properly supported facts as undisputed for purposes of this motion.

8

risk to Walker. If [Davis] had such a belief, [he] would have taken immediate remedial action to eliminate any actual threat." (Id. at ¶ 6).

Immediately after the altercation on February 5, 2015, the two were separated. (Id. at ¶ 7). "Staff then met with both Walker and Wilkins to find out what happened and why, and to see if a possible solution could be reached. It was determined that no solution could be reached so a recommendation was made to the Program Director/Assistant that either Walker or Wilkins be moved out of RU-19. [Davis] could not authorize or approve a move; [he] only can recommend one." (Id.).

It appears to be undisputed that defendant Davis is a qualified professional entitled to deference. Thus, the only other question before the Court is whether his decisions "reflect[ed] a conscious indifference amounting to gross negligence, so as to demonstrate that the decision[s] [were] not based upon professional judgment." Houghton, 965 F.2d at 1536.

As discussed above, the Court will consider defendant Nicks, Davis, Perryman, and Poole's properly supported facts as undisputed for purposes of this motion. Treating the above facts as undisputed, there is no evidence that defendant Davis's behavior reflected a conscious indifference amounting to gross negligence. Defendant Davis was not responsible for placing Plaintiff and Wilkins on the same unit, and defendant Davis was unaware of any problematic behavior displayed by Wilkins' prior to the first altercation. Defendant Davis was unaware of any actual conflict between Plaintiff and Wilkins, and observed no "red flags." If he had reason to believe that Wilkins posed an actual threat to Plaintiff he would have taken immediate action to eliminate the threat. In fact, after the first altercation Plaintiff and Wilkins were separated immediately, and after it was determined no solution could be reached, a recommendation was made that one of the two be transferred (defendant Davis did not have authority to approve a transfer; he could only recommend one).

As there is no evidence that defendant Davis's behavior reflected a conscious indifference amounting to gross negligence, summary judgment should be granted in favor of defendant Davis.

\\\

d. Defendant Nicks

According to the declaration of defendant Nicks, she has been the Transfer Coordinator since 2007. (ECF No. 111-6, ¶ 4). "As Transfer Coordinator, [she has] no interaction with patients. [She is] not a member of any patient's treatment team (TxT). [She] facilitate[s] the placement of patients within the Hospital. This includes new patients and intra-hospital transfers from different types of units and within the same unit. In all cases, several factors are considered in determining where to place a patient and the decision involves judgment and discretion at the treatment level by the TxT and at the administrative level. Although [she is] involved in placing patients, [she is] not involved in the initial decision on the level of care (i.e., MA, ICU, RU) a patient needs. That decision generally comes from the Program Director/Program Assistant through a referral. [She] take[s] all the information from the referral and place[s] the patient accordingly. Patient placement can be very challenging." (Id. at ¶ 7).

"Wilkins was transferred to RU-19 because another patient had to be transferred into RU-12 for housing with his certified domestic partner (J.P.). Wilkins and J.P. were also in a 'relationship' so a decision was made by treatment staff and the Program Director/Program Assistant to transfer Wilkins out of RU-12 to avoid any problems that might arise with all three living in RU-12. RU-19 was selected because it has the same level of care as RU-12, a bed was available, and there were no documented conflicts between Wilkins and anyone in RU-19. [Defendant Nicks] was not involved in the decisions to move Wilkins from RU-12 to another RU but [] was involved in finding Wilkins a bed in RU-19." (Id. at ¶ 11).

Defendant Nicks further declares that she has never spoken to either Walker or Wilkins, and that she was unaware of any problems between Walker and Wilkins prior to February 5, 2015. (Id. at ¶¶ 15 & 16).

It appears to be undisputed that defendant Nicks is a qualified professional entitled to deference.

Plaintiff alleges that defendant Nicks should have stopped Wilkins' transfer to RU-19 and instead have transferred Wilkins to an Intermediate Care Facility (ICF) Unit (ICF units

provide a higher level of care). However, defendant Nicks has submitted evidence, in the form of her declaration and a copy of relevant procedures,[5] that while she chose which RU to place Wilkins in, she was not involved in the decision to transfer Wilkins from RU-12 to another RU, that she was not a member of any patient's treatment team, and that she was not involved in the initial decision on the level of care. As discussed above, the Court is treating this evidence as undisputed. Thus, there is no genuine dispute that defendant Nicks was not responsible for placing Wilkins into another RU instead of transferring him to a higher level of care.[6]

Plaintiff also appears to allege that defendant Nicks should have assigned Wilkins to a different bed in RU-19. Defendant Nicks did have authority to assign Wilkins to a different bed, but Plaintiff does not explain how she should have known that there would be a conflict between himself and Wilkins, and it is undisputed that there were no documented conflicts between Wilkins and anyone in RU-19. While Plaintiff alleges that Wilkins has a history of fixating on tall black men such as himself, Plaintiff submitted no evidence that defendant Nicks was aware of such a history, or that she should have been aware of such a history. Plaintiff admits that he never spoke to defendant Nicks. (ECF No. 127, p. 3).

As Plaintiff failed to submit evidence that defendant Nicks' behavior reflected conscious indifference to Plaintiff's safety amounting to gross negligence, summary judgment should be granted in favor of defendant Nicks.

e. Defendant Perryman

According to the declaration of defendant Perryman, she is a former employee at the Department of State Hospitals-Coalinga. (ECF No. 111-7, ¶ 2). "In 2015, [she] was a Unit

---

[5] It is not entirely clear which procedures apply. The procedures for intra-hospital patient transfers submitted by Plaintiff (ECF No. 120, pgs. 16-28) became effective June 12, 2018 (id. at 16), which is over three years after the incidents occurred. These procedures do not appear to be applicable. The procedures submitted by defendant Nicks became effective June 11, 2013, and appear to have been in effect during at least some of the relevant period. The procedures submitted by defendant Saloum became effective September 9, 2014, and also appear to have been in effect during at least some of the relevant period. Neither the procedures submitted by defendant Nicks nor the procedures submitted by defendant Saloum suggest that defendant Nicks had the authority to stop Wilkins from being transferred to another RU.

[6] Based on the evidence presented, it does not appear that any of the defendants currently in this case were responsible for placing Wilkins into another RU instead of transferring him to a higher level of care. The Court notes that Plaintiff has not filed a motion to amend his complaint to add the defendant(s) who were responsible.

1  Supervisor in a Residential Recovery Unit (RU) at the Hospital. [She] started working on RU-
2  19 on March 9, 2015. (Id. at ¶ 3). "Prior to working on RU-19, [she] had no contact with, and
3  never spoke to Roger Walker. Thus, Roger Wilkins [sic] did not tell [her] he was scared of a
4  physical attack or assault by Ryan Wilkins." (Id. at ¶ 4). She "had no involvement in placing
5  Wilkins on RU-19, and [] would not have had the authority to place Wilkins or to move him
6  out of RU-19." (Id. at ¶ 5).

In addition to her declaration, defendant Perryman submitted a copy of an Employee Work Assignment, which indicates her change of assignment from RU-18 to RU-19 became effective on March 9, 2015. (Id. at 4).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009). Taking defendant Perryman's properly supported evidence as true, defendant Perryman was not the Unit Supervisor on RU-19 until March 9, 2015, which was after both fights had already taken place. Prior to working on RU-19, she had no contact with Plaintiff. Thus, it is undisputed that defendant Perryman was not involved in the alleged failure to protect Plaintiff from Wilkins. Accordingly, summary judgment should be granted in favor of defendant Perryman.

f.   Defendant Poole

According to the declaration of defendant Poole, defendant Poole is "currently a Psychiatric Technician Instructor and [has] been since March 2015. Psychiatric Technicians provide safety, treatment and evaluation." (ECF No. 111-4, ¶ 2). He was "previously a Unit Supervisor on Residential Recovery Unit (RU) 19." (Id. at ¶ 3). He believes he started in August of 2013, and transferred out in September of 2014. (Id.).

"When [he] started on RU-19, Roger Walker was a patient housed in a four-man dorm room. Sometime later, Ryan Wilkins was transferred into RU-19. [Defendant Poole] had no role in the decision to transfer Wilkins into RU-19. [He] had no firsthand knowledge of Wilkins when he was transferred into RU-19. [He] was also unaware of any physical violence or aggressive behavior by Wilkins. [He] was told that Wilkins could be 'odd' or 'weird.'" (Id. at ¶ 4).

"While on RU-19, [defendant Poole] observed no aggressive or improper behavior by Wilkins. Nor did [he] observe any 'red flags' indicative of such behavior. However, [he] did observe Wilkins engage in some 'odd' behavior like 'giggling' for no reason and walking around with a stuffed bird on his shoulder. [He] never witnessed any conflict between Walker and Wilkins. Walker did tell [him] that Wilkins was 'A little freaky', but later said he 'was cool' with Wilkins. [Defendant Poole] had no reason to believe Wilkins posed any actual threat or risk to Walker." (Id. at ¶ 5).

Additionally, defendant Poole declares that "the decision on whether to move a patient is up to the Program Director/Program Assistant. Staff can only recommend a move." (Id. at ¶ 7).

It appears to be undisputed that defendant Poole is a qualified professional entitled to deference. Thus, the only other question before the Court is whether his decisions "reflect[ed] a conscious indifference amounting to gross negligence, so as to demonstrate that the decision[s] [were] not based upon professional judgment." Houghton, 965 F.2d at 1536.

Taking defendant Poole's properly supported evidence as true, defendant Poole had no role in the decision to transfer Wilkins into RU-19. Additionally, he was unaware of any physically violent or aggressive behavior by Wilkins, did not observe any such behavior, and did not observe any red flags indicative of such behavior. While Plaintiff did tell defendant Poole that Wilkins was "[a] little freaky," Plaintiff later told defendant Poole that he "was cool" with Wilkins.

Thus, there is no evidence that defendant Poole's behavior reflected a conscious indifference amounting to gross negligence, and summary judgment should be granted in favor of defendant Poole.

    g. Defendant Saloum

        *i. Defendant Saloum's Evidence*

According to the declaration of defendant Saloum, defendant Saloum earned her "Doctor of Psychology degree from the American School of Professional Psychology at Argosy University in Egan, Minnesota." (ECF No. 113-1, ¶ 2). She does not have a medical degree

and is not a physician. (Id.).

"At the time of the incident at issue in this litigation, [she] worked as a Licensed Clinical Psychologist at California Department of State Hospitals-Coalinga ('Coalinga')." (Id.). "[She] was the unit psychologist for Plaintiff's unit at the time of the incident at issue in this litigation." (Id. at ¶ 3). "[She] do[es] not have any authority to transfer patients from one room to another or from one unit to another." (Id. at ¶ 6).

"After Mr. Wilkins was transferred to Plaintiff's dorm room in or about 2014, Plaintiff told [defendant Saloum] he wanted to get away from Mr. Wilkins because he was strange and was engaging in odd behavior. [She] specifically recall[s] that Plaintiff did not like Mr. Wilkins' hygiene habits or the fact that he talked to himself, both common symptoms of psychological illness. Every comment Plaintiff made to [her] about Mr. Wilkins was of an interpersonal nature. He never told [her] he was afraid of Mr. Wilkins or that he was worried about his personal safety or of any physical altercation. Based on the information Plaintiff was giving [her], and consistent with DSH policy, [she] counseled Plaintiff to use his coping skills, to talk to Mr. Wilkins, and to try to get along." (Id. at ¶ 4).

"Prior to the February 5, 2015, altercation, [defendant Saloum] had no professional knowledge about Mr. Wilkins' behavior in other units in DSH. The only information [she] recall[s] learning about him upon his transfer into the unit was that it was [an] administrative transfer because he had had having [sic] a sexual relationship with one or more peers in his prior unit. In [defendant Saloum's] professional judgment, nothing [she] knew about Mr. Wilkins upon his transfer into the unit, and noting [sic] Plaintiff told [her] about his interactions with Mr. Wilkins, lead [sic] [her] to believe there were any safety concerns or any indication that Plaintiff and Mr. Wilkins would end up in a physical altercation." (Id. at ¶ 5).

Attached to defendant Saloum's declaration is a copy of Coalinga's Administrative Directive No. 524, dated September 9, 2014, which sets forth the policy for intra-hospital transfers. (Id. at pgs. 5-16).

### ii.  *Plaintiff's Evidence*

Plaintiff alleges, under penalty of perjury, that he did inform defendant Saloum of

Wilkins' strange behavior, and explained to her that he and Wilkins did not get along. (ECF No. 120, p. 3). More than once, Plaintiff told defendant Saloum that he wanted to get away from Wilkins. (Id.). However, she ignored his requests to be separated, and told Plaintiff to use his coping skills and to talk more with Wilkins and to try to get along with him. (Id.). Plaintiff also told defendant Saloum that Wilkins was attracted to him, and that he was homophobic. (Id.). Plaintiff explained that Wilkins is sexually attracted to black men, like himself, and that Wilkins has violent confrontations with his "personal affixations." (Id. at 9). Plaintiff also told defendant Saloum that Wilkins' weird conduct became a shoving match because Wilkins stared while watching Plaintiff. (Id.). The worst situation, which Plaintiff described to defendant Saloum, was waking up in the middle of the night, with Wilkins standing over Plaintiff's bed groping himself. (Id.). Defendant Saloum failed to even investigate. (Id. at 3).

### iii. Analysis

It appears to be undisputed that defendant Saloum is a qualified professional entitled to deference. Thus, the only other question before the Court is whether his decisions "reflect[ed] a conscious indifference amounting to gross negligence, so as to demonstrate that the decision[s] [were] not based upon professional judgment." Houghton, 965 F.2d at 1536.

Based on the evidence above, the Court finds that there is a genuine dispute of material fact regarding whether defendant Saloum's decisions amounted to gross negligence.[7] According to the evidence submitted by Plaintiff, which is to be construed in his favor for the purpose of resolving this motion, Plaintiff told defendant Saloum that he and Wilkins did not get along, and that he wanted to get away from Wilkins. Plaintiff explained that Wilkins is sexually attracted to black men, like himself, and that Wilkins has violent confrontations with his personal fixations. Plaintiff also told her about how Wilkins' weird conduct became a

---

[7] Defendant Saloum argues that Plaintiff cannot show that defendant Saloum's decisions amounted to gross negligence because he failed to provide expert witness testimony in opposition to her motion. (ECF No. 122, pgs. 4-5). However, the Court is aware of no such requirement for failure to protect claims, and the unpublished case cited to by defendant Saloum, Rivers v. Sandhu, 749 F. App'x 613 (9th Cir. 2019), does not state that expert witness testimony is required to oppose a motion for summary judgment.

shoving match, and about a situation where he woke up with Wilkins' standing over him, groping himself. Defendant Saloum's only response was to tell Plaintiff to try to use his coping skills, to talk more with Wilkins, and to try to get along with Wilkins. Wilkins subsequently assaulted Plaintiff twice. Accordingly, the Court finds that there is a genuine dispute of material fact regarding whether defendant Saloum's decision to do nothing but tell Plaintiff to use his coping skills, to talk more with Wilkins, and to try to get along with Wilkins, amounted to gross negligence.[8]

Defendant Saloum does argue that even if she failed to exercise professional judgment she is not liable because she lacked the authority to transfer Plaintiff. (ECF No. 122, p. 4). However, at the very least, there is a genuine dispute regarding defendant Saloum's ability to protect Plaintiff. While she could not have transferred Plaintiff to a different unit or to a different bed in the same unit on her own, according to Defendant Saloum's own evidence, it appears that, as the psychologist on Plaintiff's treatment team (ECF No. 112, p. 2), she could have taken part in the process to transfer Plaintiff to a different bed in the same unit[9] or the process to recommend that Plaintiff be transferred to a different unit.[10] Thus, at the very least, there is a genuine dispute regarding whether she could have taken action to protect Plaintiff from Wilkins.

Defendant Saloum also argues that paragraph six of Plaintiff's declaration, in which he claims that he told defendant Saloum that Wilkins was sexually attracted to him, that Wilkins has violent confrontations with his personal fixations, and that the weird conduct became a shoving match, should be disregarded as a sham because it directly contradicts his deposition

---

[8] Defendant Saloum argues that Plaintiff admits she exercised her professional judgment (ECF No. 112, p. 8), relying on a statement in Plaintiff's complaint where Plaintiff states that defendant Saloum's "acts or failure to act suggests that her professional judgment was not just flawed but contrary to the written customs and policies of Coalinga" (ECF No. 18, p. 15). While perhaps not artfully pled, Plaintiff appears to be challenging defendant Saloum's exercise of professional judgment, not admitting that she appropriately exercised her professional judgment.

[9] According to the patient transfer procedures, "[s]ingle rooms are available on all units." (ECF No. 113-1, p. 11). A patient can be moved to a single room if the Treatment Plan Team determines that "the patient would benefit from a single room for his protection or the protection of others." (Id.).

[10] While "[a] Physicians' Order (DSH-C 118) and a Psychiatrist's note are required for transfer" from one RU to another RU, it appears that the process begins by the Treatment Plan Team completing the "Intra Hospital Referral Form (DSH-C 262)." (ECF No. 113-1, pgs. 8-9).

1  testimony.  (ECF No. 122, p. 3).

2  "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.  This sham affidavit rule prevents a party who has been examined at length on deposition from rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact….  But the sham affidavit rule should be applied with caution because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment.  In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit."  Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012) (citations and internal quotation marks omitted) (first alteration in original).

Here, defendant Saloum does not cite to any particular portion of the transcript that directly contradicts Plaintiff's declaration, and after reviewing the portions of the transcript submitted by defendant Saloum, it is not clear that there is such a contradiction.  It appears that defendant Saloum may be arguing that Plaintiff's declaration is a sham because, in his deposition, Plaintiff stated that he never told staff that he was scared Wilkins was going to "beat [him] up."  Transcript of Plaintiff's Deposition Dated June 19, 2019, ECF No. 112-6, p. 14.  However, Plaintiff did state that he told staff that he was scared that he was going to have a physical confrontation with Wilkins because Wilkins was threatening Plaintiff.  Id.  Thus, there is not a clear contradiction between Plaintiff's deposition and his declaration.  Given that defendant Saloum failed to cite to the alleged contradiction(s), that the sham affidavit rule is to be applied with caution, and that the inconsistency must be clear and unambiguous, the Court will not apply the rule here.[11]

---

[11] The Court notes that there may be a contradiction regarding whether there was a shoving match between Wilkins and Plaintiff prior to the fights in February of 2015.  In his deposition, Plaintiff appears to allege that he did not get into a fight with Wilkins prior to the fights in February.  Transcript of Plaintiff's Deposition Dated June 19, 2019, ECF No. 112-6, p. 13.  However, even if this were a clear contradiction and the Court

17

Finally, defendant Saloum argues that she is entitled to qualified immunity. In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by Plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232. To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" Reichle v. Howards, 132 S. Ct. 2088, 2090 (2012) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)) (alteration in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

As analyzed above, the facts shown by Plaintiff make out a violation of a constitutional right.

Defendant Saloum also argues that the right was not clearly established, relying on Swan v. United States, 159 F. Supp. 2d 1174 (N.D. Cal. 2001). According to defendant Saloum:

> "[i]n *Swan*, an inmate in the federal prison in Dublin, California, was attacked by another inmate and suffered an injury that required surgery. Swan contended that prior to the attack he provided information to prison officials, including the prison staff psychologist, which should have put the defendants on notice of an impending assault.
>
> Three weeks before the attack, Swan requested an emergency session with the psychologist and during that session he told her he had been confronted and intimidated by a group of inmates and one inmate had threatened him. Swan told the psychologist he was afraid. The psychologist did not pursue potentially available measures to protect him, or inform him of protective measures that were available, or tell anyone else about the confrontation. The psychologist conceded that it was a possibility that the inmates would hurt Swan but after thinking about it she did not feel concerned that they would. The court found that facts supported the conclusion that Swan was not in immediate danger: Swan never said he believed the insults would escalate into violence; he did not expressly ask for protection from the administrator; statements subsequent to the session indicated his fears had subsided; he told the psychologist not to disclose the information for fear of being labeled a snitch; and he failed to report any fear or any intimidation in two subsequent sessions. The court determined the

---

declined to consider Plaintiff's allegation that he told defendant Saloum that he and Wilkins engaged in a shoving match, given the remainder of Plaintiff's allegations it would not change the analysis.

Case 1:16-cv-01665-AWI-EPG   Document 137   Filed 07/10/20   Page 19 of 20

> psychologist was entitled to qualified immunity because a reasonable official, having the same knowledge that she had, could have believed that no excessive risk to Swan's health or safety existed under the circumstances.

(ECF No. 112, pgs. 12-13) (citations omitted).

The facts in this case are clearly distinguishable from the facts in Swan. Here, Plaintiff has submitted evidence that he told defendant Saloum that about Willkins' "strange" behavior, that he and Wilkins did not get along, that Wilkins was attracted to him, that Wilkins has violent confrontations with his "personal affixations," and that he wanted to get away from Wilkins. Moreover, unlike in Swan, there is no evidence here that Plaintiff told defendant Saloum that his fears had subsided or that he told defendant Saloum not to disclose the information. As such, Swan appears to be inapplicable here.

Additionally, it has long been established that it is unconstitutional to confine civil detainees in unsafe conditions. Youngberg, 457 U.S. at 315-316. Here, taking all of Plaintiff's evidence as true and drawing all reasonable inferences in the light most favorable to Plaintiff, Plaintiff informed defendant Saloum that he was not safe because he was housed with Wilkins, Plaintiff provided specific and legitimate reasons as to why he did not believe he was safe, defendant Saloum did not act to protect Plaintiff, and Plaintiff was assaulted by Wilkins (twice). Unlike in Swan, there is no evidence in the record as to why defendant Saloum did not act to protect Plaintiff, despite Plaintiff's concerns.[12] Thus, construing the disputed facts in Plaintiff's favor, any reasonable official would have understood that not acting to protect Plaintiff in this situation would violate Plaintiff's right to safe conditions.

The Court notes that defendant Saloum appears to be arguing that she is entitled to qualified immunity when viewing the facts in the light most favorable to her and taking her evidence as true, which is not appropriate when dealing with a motion for summary judgment filed by defendant Saloum.

\\\

---

[12] There appears to be no evidence because, according to Defendant Saloum, Plaintiff did not in fact inform her that he was afraid of being attacked. (ECF No. 113-1, ¶¶ 4-5). However, when ruling on a defendant's motion for summary judgment, the Court is required to take the plaintiff's evidence as true and view the evidence in the light most favorable to the plaintiff

### IV. RECOMMENDATIONS

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. Defendants Davis, Nicks, Perryman, and Poole's motion for summary judgment (ECF No. 111) be GRANTED;
2. Defendant Saloum's motion for summary judgment (ECF No. 112) be DENIED; and
3. Judgment be entered in favor of defendants Davis, Nicks, Perryman, and Poole.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 9, 2020**   /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE